UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| LEONARD O.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 2:25-cv-00808<br><br>Magistrate Judge Daphne A. Oberg |

Leonard O.[1] brought this action for judicial review of the denial of his application for disability insurance benefits.[2] The administrative law judge (ALJ) who addressed his application determined he did not qualify as disabled.[3] Mr. O. argues the ALJ erred by omitting his physical limitations from the residual functional capacity assessment and by finding he had the equivalent of a high school education.[4] He also contends the Appeals Council erred by refusing to consider new medical evidence he submitted after

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in court orders in certain cases, including social security cases, the plaintiff is referred to by first name and last initial only.

[2] (Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. (Tr.) 49–59, Doc. No. 12.)

[4] (*See* Opening Br., Doc. No. 17 at 1.) Because Mr. O.'s briefing lacks consistent page numbering, references are to the CM/ECF pagination.

the ALJ's decision.[5] As explained below, the ALJ applied the correct legal standards, and substantial evidence supports his findings. Further, Mr. O. waived his contention of error by the Appeals Council by failing to adequately brief it. Accordingly, the Commissioner's decision is affirmed.[6]

**STANDARD OF REVIEW**

Section 405(g) of Title 42 of the United States Code provides for judicial review of the Commissioner's final decision. This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[7] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[8]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[9] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[10] Substantial evidence is "such relevant evidence as a

---

[5] (*See id.* at 1–2.)

[6] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 9.)

[7] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[8] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation omitted).

[9] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[10] *Id.* at 103 (citation omitted).

reasonable mind might accept as adequate to support a conclusion."[11] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[12] And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[13]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[14] An individual is considered disabled only if his impairments are so severe, he cannot perform his past work or "any other kind of substantial gainful work."[15]

To determine if a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;
2) he has a severe medically determinable physical or mental impairment;
3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);
4) he has the residual functional capacity to perform past relevant work; and

---

[11] *Id.* (citation omitted).

[12] *Lax*, 489 F.3d at 1084 (citation omitted).

[13] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[14] 42 U.S.C. § 423(d)(1)(A).

[15] *Id.* § 423(d)(2)(A).

5) he has the residual functional capacity to perform other work, considering his age, education, and work experience.[16]

In the first four steps, the claimant has the burden of establishing disability.[17] But at step five, the Commissioner must show the claimant retains the ability to perform other work in the national economy.[18]

**PROCEDURAL HISTORY**

Mr. O. applied for disability insurance benefits under Title II of the Social Security Act,[19] alleging he became disabled in May 2020, at the age of fifty-three.[20] After an administrative hearing,[21] the ALJ issued a decision in July 2025, denying benefits.[22]

At step two of the sequential evaluation, the ALJ found Mr. O. had the severe impairments of "post-traumatic stress disorder (PTSD), depressive disorder, anxiety disorder, and attention deficit hyperactivity disorder (ADHD)."[23] He concluded Mr. O. also had nonsevere impairments of insomnia, diabetes, hearing loss/tinnitus, and

---

[16] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[17] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[18] *Id.*

[19] 42 U.S.C. §§ 401–434.

[20] (*See* Tr. 49, 58, 349–52.)

[21] (*See* Tr. 69–110.)

[22] (Tr. 49–59.)

[23] (Tr. 51.)

substance abuse.[24] At step three, the ALJ found Mr. O.'s impairments did not meet or medically equal an impairment listing.[25]

The ALJ then determined Mr. O. had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with the following nonexertional limitations: "no driving as a job duty; can understand, remember, and carry out simple instructions; can have occasional changes in a routine work setting; can have occasional, brief contact with the public; and can have occasional contact with coworkers and/or supervisors."[26] At step four, the ALJ noted Mr. O. had no past relevant work.[27] But at step five, based on the RFC assessment and the testimony of a vocational expert, the ALJ found Mr. O. could perform jobs in the national economy.[28] Accordingly, the ALJ found Mr. O. not disabled and denied his claim.[29] This decision became final when the Appeals Council denied Mr. O.'s request for review.[30]

## DISCUSSION

Mr. O. argues the ALJ erred by omitting his physical limitations from the RFC assessment, and by finding he had the equivalent of a high school education at step

---

[24] (Tr. 52.)

[25] (*Id.*)

[26] (Tr. 54.)

[27] (Tr. 58.)

[28] (Tr. 58–59.)

[29] (Tr. 59.)

[30] (Tr. 6–8.)

five.[31] He also argues, in his statement of the issues, that the Appeals Council erred by refusing to consider evidence submitted after the hearing decision.[32] As explained below, Mr. O. has not shown the ALJ made any error requiring remand, and he has waived his argument regarding the Appeals Council.

A. <u>Physical RFC Assessment</u>

Mr. A first contends the ALJ erred by omitting any physical limitations from the RFC and by finding him capable of work at all exertional levels.[33]

*1. Applicable Law*

A claimant's RFC reflects the most he can do in a work setting considering his limitations.[34] In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."[35] The ALJ considers all relevant evidence in the record.[36] In assessing a claimant's RFC, the ALJ must consider the persuasiveness of medical opinions and prior administrative medical

---

[31] (*See* Opening Br., Doc. No. 17 at 1.)

[32] (*Id.* at 1–2.)

[33] (*See id.* at 1, 8–17.)

[34] *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).

[35] SSR 96-8p, 1996 SSR LEXIS 5, at *5.

[36] *See* 20 C.F.R. § 404.1545(a)(3).

findings, and explain how he considers the supportability and consistency of opinion evidence.[37]

*2. ALJ's Decision*

In his application for benefits, Mr. O. alleged disability due to PTSD, sexual assault, and hearing loss/tinnitus; he did not claim other physical impairments.[38] In a function report, Mr. O. only reported difficulties with mental functional abilities.[39] His hearing testimony focused on mental health issues,[40] and he denied difficulty with physical activities such as climbing stairs.[41]

The ALJ found Mr. O. had nonsevere physical impairments of insomnia, diabetes, hearing loss/tinnitus, and substance abuse.[42] The ALJ explained these impairments caused no more than "minimal limitation in the ability to perform basic work activities," but he considered them when assessing Mr. O.'s RFC.[43] The ALJ then concluded Mr. O. had the RFC to do a full range of work at all exertional levels, with no physical limitations.[44]

[37] 20 C.F.R. § 404.1520c.

[38] (Tr. 408.)

[39] (Tr. 422–29.)

[40] (*See* Tr. 77–104.)

[41] (*See* Tr. 82–85.)

[42] (Tr. 52.)

[43] (*Id.*)

[44] (Tr. 54.)

In making these findings, the ALJ discussed Mr. O.'s physical consultative examination with Dr. Tim Curtis.[45] Dr. Curtis noted Mr. O. had "tenderness to palpation over the thoracolumbar spine, positive axial loading, back pain with straight leg raises, and painful but full range of motion in the cervical spine."[46] But Mr. O. also had "full range of motion throughout, normal motor strength, intact sensation, normal deep tendon reflexes, and normal gait."[47] He could "walk on heels, toes, and in tandem," "hop on either foot, perform a deep squat and take several steps forward, and rise from a sitting position without assistance."[48] Dr. Curtis opined Mr. O. "would be able to sit, stand, or walk for short to moderate periods of time and lift or carry light to moderately heavy objects, but he would be unsuitable for activities that require bending or twisting at the waist."[49] The ALJ found this opinion unpersuasive.[50] The ALJ explained it was unsupported by Dr. Curtis's report, which showed Mr. O. could perform the tested physical activities "[d]espite some reports of pain."[51] The ALJ also found the opinion inconsistent with the record as a whole, noting Mr. O. did not allege or testify to any physical limitations and "the medical evidence [did] not reflect findings resulting in

[45] (Tr. 52 (citing 795–803).)

[46] (*Id.*)

[47] (*Id.*)

[48] (*Id.*)

[49] (*Id.* (citing Tr. 803).)

[50] (*Id.*)

[51] (*Id.*)

physical limitations."[52] The ALJ cited treatment records showing normal physical examination findings.[53]

*3. Analysis*

Mr. O. raises numerous challenges to the ALJ's physical RFC assessment, but none establish reversible error. First, he argues the ALJ erred by not discussing the prior administrative findings of Dr. Dennis Gordon, the state agency medical consultant.[54] But "an ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity."[55] Here, Dr. Gordon found Mr. O. had no severe physical impairments and did not assess any physical RFC limitations.[56] Because this is consistent with the ALJ's findings, any failure to discuss Dr. Gordon's findings was harmless.

Next, Mr. O. argues the ALJ erred by finding him capable of heavy work without relying on any specific medical opinions.[57] He suggests the ALJ instead improperly

---

[52] (*Id.* (citing Tr. 923, 1011).)

[53] (Tr. 923, 1011.)

[54] (Opening Br., Doc. No. 17 at 9.)

[55] *Mays v. Colvin*, 739 F.3d 569, 578–79 (10th Cir. 2014) (explaining that in this situation "the claimant is not prejudiced because giving greater weight to [the opinion] would not have helped [him]" (first alteration in original) (internal quotation marks omitted)).

[56] (Tr. 155.)

[57] (Opening Br., Doc. No. 17 at 9, 13–14.) The ALJ's finding that Mr. O. was capable of work at all exertional levels necessarily included the ability to do heavy work. *See* 20

relied on his own lay interpretation of raw medical findings.[58] But "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."[59] "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."[60] Here, the ALJ based his conclusion that Mr. O. had no physical RFC limitations on other evidence in the record, including Dr. Curtis's report of Mr. O.'s physical abilities on examination, other normal physical examinations by treating providers, and the fact that Mr. O. did not allege or testify to any physical limitations.[61] Contrary to Mr. O.'s argument, the ALJ cited medical sources' observations and assessments rather than his own lay interpretation of raw medical data.[62] The evidence the ALJ cited is more than

---

C.F.R. § 404.1567 (defining five exertional levels used to classify jobs: sedentary, light, medium, heavy, and very heavy).

[58] (Opening Br., Doc. No. 17 at 14.)

[59] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012); *see also Terwilliger v. Comm'r, Soc. Sec. Admin.*, 801 F. App'x 614, 628 (10th Cir. 2020) (unpublished) (stating the same proposition); *Berumen v. Colvin*, 640 F. App'x 763, 766 (10th Cir. 2016) (unpublished) (same).

[60] *Chapo*, 682 F.3d at 1288 (alteration in original) (citation omitted); *see also Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (unpublished) ("The determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect [his] ability to perform work-related activities.").

[61] (*See* Tr. 52 (citing Tr. 795–803, 923, 1011).)

[62] *See Neal v. Comm'r, Soc. Sec. Admin.*, 782 F. App'x 722, 724 (10th Cir. 2019) (unpublished) (finding an ALJ did not make an improper lay interpretation of medical evidence where the ALJ did not interpret raw medical data or step into the shoes of a medical examiner).

"mere scintilla"[63] and is adequate to support his conclusion—particularly where Mr. O. himself did not claim exertional limitations. In other words, substantial evidence supports the ALJ's conclusion, despite his lack of reliance on any specific medical opinion.

Mr. O. also argues the ALJ provided 'no explanation' for finding Dr. Curtis's opinion inconsistent with Mr. O.'s normal test results or the overall record.[64] To the contrary, the ALJ provided a detailed explanation. As noted above, the ALJ explained Mr. O. could perform all physical activities during Dr. Curtis's examination "[d]espite some reports of pain,"[65] other physical examinations in the record were normal, and Mr. O. did not allege physical limitations.[66] The ALJ adequately explained his rationale for rejecting Dr. Curtis's opinion, and substantial evidence supports his findings.

Mr. O. also suggests the ALJ should have requested more records from his treating doctors or arranged another consultative examination.[67] "[T]he ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."[68] Ordinarily, however, "the ALJ may reasonably rely on counsel

---

[63] *Biestek*, 587 U.S. at 103.

[64] (Opening Br., Doc. No. 17 at 9–10.)

[65] (Tr. 52.)

[66] (*Id.*)

[67] (Opening Br., Doc. No. 17 at 12–13.)

[68] *Wall v. Astrue*, 561 F.3d 1048, 1062–63 (10th Cir. 2009) (citation omitted).

to identify the issue or issues requiring further development."[69] Here, Mr. O. did not claim physical impairments other than hearing loss/tinnitus, he did not testify to exertional limitations, and his counsel did not identify any issues requiring further development at the hearing.[70] Further, the medical records the ALJ relied on sufficiently support his conclusion that Mr. O. had no physical RFC limitations. Under these circumstances, the ALJ had no duty to seek updated medical opinions or a consultative examination.[71]

Mr. O. next argues the ALJ failed to consider record evidence inconsistent with an ability to perform heavy work.[72] He points to evidence that he reported injuring his back in 2005 and was prescribed pain medication (acetaminophen and a lidocaine patch) for back pain.[73] Mr. O. also notes he reported "hip problems due to old age," and X-rays in 2022 showed his knees were "normal for his age" despite his reported

---

[69] *Id.* at 1063 (internal quotation marks omitted).

[70] (*See* Tr. 71–72, 77–104, 408.) Mr. O.'s counsel stated some "confirmatory" VA records were forthcoming, but he did not suggest any need to request additional records or order a new consultative examination. (*See* Tr. 71–72.)

[71] *See Jazvin v. Colvin*, 659 F. App'x 487, 489–90 (10th Cir. 2016) (unpublished) (finding an ALJ was not required to order a consultative examination, where the claimant's attorney did not request one and her medical records provided enough information to make a disability determination); *Cowan v. Astrue*, 552 F.3d 1182, 1187–88 (10th Cir. 2008) (finding no need to further develop the record where "there was no request from [the claimant's] counsel for any other existing medical records to be obtained, for a consultative mental examination to be performed, or for any other development of the record to be undertaken").

[72] (Opening Br., Doc. No. 17 at 11–12.)

[73] (*See* Tr. 1325; Opening Br., Doc. No. 17 at 12 n.29 (listing records of pain medications).)

intermittent left knee pain.[74] But the ALJ did not need to discuss every piece of evidence, so long as the record shows he considered all the evidence.[75] "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."[76] Mr. O. has not shown the isolated records he cites regarding self-reported back, hip, and knee problems are significantly probative, where none include physical examination findings suggesting specific functional limitations. Accordingly, the ALJ was not required to discuss this evidence. Further, the ALJ cited the hearing exhibits containing the records Mr. O. relies on, demonstrating he considered them.[77]

Finally, Mr. O. contends Dr. Curtis's examination findings did not show he was capable of heavy work on a "regular and continuing basis."[78] He argues the examination only showed he could do short tasks in a clinical setting, not lift heavy loads repeatedly or stand for long periods.[79] But the ALJ did not solely rely on Dr. Curtis's examination. As described above, he also cited normal physical examination

---

[74] (Opening Br., Doc. No. 17 at 11 (citing Tr. 674, 1739).)

[75] *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

[76] *Id.* at 1010.

[77] (*See* Tr. 52, 55–57 (citing hearing exhibits 2F, 7F, & 8F (Tr. 592–681, 830–2050).)

[78] (Opening Br., Doc. No. 17 at 15); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *5 ("RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." (emphasis omitted)).

[79] (Opening Br., Doc. No. 17 at 15.)

findings from other providers, and noted Mr. O.'s lack of claimed physical limitations.[80] Notably, Mr. O. had the burden to provide evidence showing functional limitations.[81] Where Mr. O. does not identify record evidence supporting exertional limitations (other than isolated self-reports), the ALJ did not err in omitting physical limitations from the RFC assessment.

For all these reasons, Mr. O. has not shown any error requiring remand in the physical RFC assessment.

B. Education Level

Mr. O. next contends the ALJ improperly "elevated [him] to a 'high school education' based solely on his military service," when assessing his ability to work at step five.[82] Mr. O. has not shown error in the ALJ's assessment of his education level.

Agency regulations provide several special vocational profiles which show an inability to adjust to other work.[83] These include the "no work profile," which addresses an individual who: 1) is at least fifty-five years old, 2) has no more than a limited education, and 3) has no past relevant work experience.[84] If the claimant has a severe

---

[80] (Tr. 52.)

[81] *See Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) ("We disagree with claimant's implicit argument that the agency, not the claimant, has the burden to provide evidence of claimant's functional limitations.").

[82] (Opening Br., Doc. No. 17 at 1; *see also id.* at 17–27.)

[83] *See* 20 C.F.R. § 404.1562; SSR 24-1p, 2024 SSR LEXIS 2, at *3 (June 22, 2024).

[84] 20 C.F.R. § 404.1562(b); SSR 24-1p, 2024 SSR LEXIS 2, at *3, 6–7.

impairment and these conditions are met, the ALJ must find him disabled.[85] The agency "generally consider[s] that a 7th grade through the 11th grade level of formal education is a limited education."[86] "High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above."[87] The agency "generally consider[s] that someone with these educational abilities can do semi-skilled through skilled work," while someone with limited education cannot.[88]

Here, the ALJ found Mr. O. had no past relevant work, where he did not work during the five years preceding the decision.[89] And Mr. O. turned fifty-five in July 2021 (after the alleged onset date but before the decision).[90] The ALJ also acknowledged Mr. O. did not graduate from high school or earn a GED, but he found Mr. O.'s "military experience amount[ed] to at least a high school education."[91] As the ALJ explained, Mr. O. "completed basic training, had advanced individual training as a driver, and he

---

[85] 20 C.F.R. § 404.1562(b).

[86] 20 C.F.R. § 404.1564(b)(3).

[87] *Id.* § 404.1564(b)(4).

[88] *Id.* § 404.1564(b)(3)–(4).

[89] (*See* Tr. 58); *see also* SSR 24-2p, 2024 SSR LEXIS 1, at *3–4 (June 22, 2024) (defining past relevant work as "work that an individual has done within the past 5 years, that was [substantial gainful activity], and that lasted long enough for the individual to learn to do it" (footnote omitted)).

[90] (*See* Tr. 349 (listing Mr. O.'s date of birth as July 25, 1966).)

[91] (Tr. 58.)

completed a full term of enlistment with associated training and completed a term in the National Guard, both of which ended in honorable discharge."[92] The ALJ noted "[t]hese experiences amount to more responsibility than high school education."[93]

The ALJ's determination that Mr. O. had the equivalent of a high school education is consistent with the governing regulations and supported by substantial evidence. The regulations provide that "the numerical grade level [a claimant] completed in school may not represent [his] actual educational abilities" but "may be higher or lower."[94] And agency guidance permits an ALJ to assign a higher or lower education category based on "[e]vidence such as past work experience, the kind of responsibility an individual may have had when working, daily activities, hobbies, results of testing, community projects, or vocational training."[95]

Consistent with this guidance, the ALJ considered Mr. O.'s work experience, responsibilities, and training in the military when assessing his educational level. The ALJ cited the psychological examiner's report, which indicated Mr. O. dropped out of high school two weeks into his senior year and joined the military; he tried to work on his GED but did not pass by a few points; he had no history of learning disabilities or special education services; he spent four years in the U.S. Army and four years in the

---

[92] (*Id.* (citing Tr. 804).)

[93] (*Id.*)

[94] 20 C.F.R. § 404.1564(b).

[95] SSR 20-01p, 2020 SSR LEXIS 2, at *3–4 (Apr. 27, 2020).

National Guard; he was honorably discharged; and he worked as a truck driver for seventeen years.[96] Other records show Mr. O. completed advanced individual training as a truck driver in the military (as the ALJ noted) and obtained a commercial driver's license.[97] This evidence supports the ALJ's finding that Mr. O.'s training and experience amounted to a high school education level. It is more than a "mere scintilla."[98] It qualifies as substantial evidence supporting the ALJ's finding.

For these reasons, the ALJ did not err in finding Mr. O. had the equivalent of a high school education. And Mr. O. does not challenge any other aspect of the ALJ's step-five finding that he could perform work in the national economy.

C. Appeal Council Evidence

Finally, in his statement of issues, Mr. O. lists as a third issue: "The Appeals Council refused to consider new VA medical evidence, including treatment records from March 28, 2024, to May 21, 2025, which show severe orthopedic impairments, chronic pain, and functional deterioration inconsistent with heavy work activity."[99] Mr. O. then acknowledges that "[b]ecause of space, this issue was not briefed specifically, although the records were cited in the relevancy argument supporting [Mr. O.'s] claim of physical

---

[96] (*See* Tr. 58, 804–05.)

[97] (*See* Tr. 58, 103, 409.)

[98] *Biestek*, 587 U.S. at 103.

[99] (Opening Br., Doc. No. 17 at 1 (citing Tr. 111–43).)

incapacity to do heavy work."[100] Mr. O.'s opening brief contains no further argument on this issue.

Mr. O. has waived this issue by failing to adequately develop it. "Where an appellant lists an issue, but does not support the issue with argument, the issue is waived on appeal."[101] In the social security context, "perfunctory" claims of error are considered waived if they are unsupported by developed argument.[102] Mr. O. cites no legal authority supporting his argument; he does not explain what legal standards apply or how the Appeals Council violated them. And while he cites thirty-three pages of records, he does not identify how any particular portions support his contention of error. Because Mr. O.'s failure to develop this issue prevents meaningful review, it is waived.

---

[100] (*Id.* at 1–2.)

[101] *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1031 (10th Cir. 2007).

[102] *See Wall*, 561 F.3d at 1066 ("The 'perfunctory presentation' of Claimant's argument concerning her residual physical capacity 'deprived [the district] court of the opportunity to analyze and rule on this issue now raised in detail for the first time on appeal.'" (alteration in original) (quoting *Tele-Commc'ns, Inc. v. Comm'r of Internal Revenue*, 104 F.3d 1229, 1234 (10th Cir. 1997))); *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (finding "perfunctory complaints fail to frame and develop an issue sufficient to invoke appellate review").

## CONCLUSION

The Commissioner's decision is affirmed.

DATED this 22nd day of September, 2026.

BY THE COURT:

Daphne A. Oberg

Daphne A. Oberg
United States Magistrate Judge